IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

# 5TH DIVISION DIVISION

FILED 10/26/10 16:21:16
Pat O'Brien Pulaski Circuit Clerk
CR2

REPLACEMENT PARTS, INC.;
PARTS WAREHOUSE, INC.; AND PCD, INC.
d/b/a THREE WAY TRANSFER OF AR                                    PLAINTIFFS

VS.                          60 CV 2010 6118
CASE NO. _____

UNION PACIFIC RAILROAD COMPANY                                   DEFENDANT

## COMPLAINT FOR INJUNCTIVE RELIEF AND FOR DAMAGES

Comes now the plaintiff, Replacement Parts, Inc. and Parts Warehouse, Inc. (hereinafter at times collectively referred to as "RPI") and PCD, Inc. d/b/a Three Way Transfer of AR ("Three Way") by and through their attorneys, Barber, McCaskill, Jones & Hale, P.A., and James, Carter & Coulter, PLC., and for their Complaint for Injunctive Relief and for Damages, states:

## INTRODUCTION

1.      With respect to each plaintiff, the sole access to their businesses crosses over a rail line used by Union Pacific.  In recent years, Union Pacific began using the rail line as an extension of its rail yard, which is located due west of the plaintiffs' businesses.  Over the last two years, Union Pacific has used the rail line in an unlawful manner by frequently blocking the sole access to each of the plaintiffs' businesses, sometimes for hours at a time during peak working hours.  The excessive and unlawful blockages have resulted in (1) the unreasonable risk of harm to the customers and employees of the plaintiffs, (2) the disruption of the plaintiffs' businesses and model of operation, (3) harm to the plaintiff's

1



reputation, (4) loss of the use and enjoyment of the plaintiffs' property, and (5) diminished value of the plaintiffs' property.

2.       The plaintiffs seek to enjoin Union Pacific Railroad from blocking access to their land and businesses; compelling Union Pacific to repair and maintain the fallen power lines, obstructed drainage, and the right of way in general; and prevent Union Pacific from depriving the plaintiffs of the use and enjoyment of their property through Union Pacific's continued use of the crossings at RPI and Three way as part of Union Pacific's rail yard.   In addition, RPI and Three Way seek to recover damages sustained by the plaintiffs as a result of Union Pacific's misconduct, as is further described below.

**JURISDICTION AND VENUE**

3.       Replacement Parts, Inc. and Parts Warehouse, Inc. are Arkansas Corporations with their principal place of business located at 1901 East Roosevelt Road, Little Rock, Arkansas  72206.  Parts Warehouse, Inc. is a wholly owned subsidiary of Replacement Parts, Inc.

4.       PCD, Inc., d/b/a Three Way Transfer of AR is an Arkansas corporation with its principle place of business in Fort Smith, Arkansas and with a terminal located at 3100 Dugan Street, Little Rock, AR  72206.  Three Way's Little Rock terminal is located next door to RPI's facilities.

5.       The defendant Union Pacific Railroad Company ("Union Pacific") is a foreign corporation with its principal place of business in Omaha, Nebraska.  Union Pacific may be served through its registered agent, The Corporation Company, 124 West Capitol Avenue, Ste. 1900, Little Rock, Arkansas 72201.

2

6. All of the wrongful conduct identified in this Complaint occurred within Pulaski County, Arkansas. This Court has jurisdiction over the subject matter of this case.

7. The defendant conducts business in Little Rock, Pulaski County, Arkansas, and this Court has personal jurisdiction over the parties in this case.

8. Because all of the events identified in this Complaint occurred in Pulaski County, Arkansas, venue is proper in this Court.

## STATEMENT OF FACTS

9. This lawsuit involves the real property used by the plaintiffs for their businesses, located at 1901 East Roosevelt Road and 3100 Dugan Street in Little Rock, Arkansas. For the purposes of this Complaint, the area was originally owned through 1970's by Chicago, Rock Island and Pacific Railroad Company (hereinafter at times referred to as "CRI&P RR").

10. The land at issue was subsequently purchased by Robert M. Goff, Jr., Richard A. Goff, Sr., and Julie Goff Allen (the "Goff Property"). The Goff Property was subsequently developed into commercial lots. RPI's property at issue in this lawsuit was at times identified as Lot 1 of Strafco's Replat of Goff's No. 1 Addition to the City of Little Rock, Pulaski County, Arkansas. Following the purchase of the Goff Property, the Chicago, Rock Island and Pacific Railroad Company released its remaining interest in the property to Robert M. Goff, Jr., Richard A. Goff, Sr., and Julie Goff Allen. The CRI&P railroad line running through the land was thereafter abandoned.

11. A copy of the Assignment which documents the above transactions is attached hereto as Exhibit "1". A copy of the Plat, which identifies Strafco's Replat and

3

CRI&P railroad line, is attached hereto as Exhibit "2". The Goffs also granted a "perpetual but non-exclusive easement for pedestrian and vehicular traffic" extending North and South between Roosevelt Road and Lot 1 of the Strafco Replat. A copy of the public easement is attached hereto as Exhibit "3."

12.    The easement between Roosevelt Road and Lot 1 of the Strafco Replat crosses over the abandoned CRI&P rail line. The railroad crossing to RPI's property is a public crossing with a DOT number.

13.    Lot 1, Strafco's Replat was conveyed to the City of Little Rock. On or about October 29, 1986, the City of Little Rock conveyed the property via special warranty deed to Parts Warehouse, Inc. A copy of the special warranty deed documenting these transactions is attached hereto as Exhibit "4."

14.    Dugan Street extends from Roosevelt road to Three Way's terminal in Little Rock, and Dugan Street runs parallel to the perpetual easement used by RPI to access its property. Like the public easement used by RPI, Dugan Street crosses over the rail line, and that crossing is a public crossing with a DOT number. Dugan Street is the only means of ingress and egress to Three Way's business.

15.    Union Pacific operates a rail yard due west of the property at issue in this lawsuit. Several years ago, Union Pacific began using the railway line that had been abandoned by CRI&P. Union Pacific's initial use of the line did not interfere with Three Way's or RPI's ability to use and enjoy the property or otherwise operate their businesses in a safe and efficient manner.

4

16.     Representatives of RPI and Three Way subsequently observed Union Pacific's increased use of the abandoned rail line.  Over the last two years, employees of RPI and Three Way have observed that Union Pacific has in fact been using the abandoned rail line as an extension of its railway yard due west of RPI's property.  To be specific, Union Pacific more frequently parked trains in a manner that blocked all means of travel to and from the businesses and property of the plaintiffs, and Union Pacific engineers frequently moved sections of trains back and forth while continuously blocking access to the property.  At times, access to and from RPI's property was blocked for multiple hours on each occasion, and on days with heavy traffic, Union Pacific engineers would block traffic cumulatively for several hours during the busiest time of the workday.  Again, the abandoned rail line is situated in such a manner that the only means of lawful ingress and egress to the businesses and property of RPI and Three Way is through the crossings that are frequently blocked by Union Pacific.

17.     Union Pacific's transition to using the rail line as an extension of its yard became evident during an incident when Union Pacific blocked the crossing at the beginning of a work day, which left the majority of RPI's employees stranded outside the facility for over two hours.  RPI initially believed that the blockage was an isolated incident.  However, RPI's employees observed increased frequency in blockages including several more that exceeded two hours in length during the busiest time of RPI's work day.  Over the last year, RPI complained to Union Pacific about the blockages, and while the representative of Union Pacific have been courteous, they failed remedy the problem.

18.     Likewise, employees of Three Way also recall being locked in and out of their business for hours at a time over the last two years, while waiting on the trains to move. Three Ways' business is located near RPI's facility, and in many instances, the crossing at Dugan Street and to RPI are simultaneously blocked by a single train.  On one Sunday in May of 2009, the crossings were blocked in excess of two hours.  As a result, the Three Way operations manager, who intended to be at work briefly, was effectively locked in the facility on his day off.

19.     Although there were many instances in which Three Way's access was blocked for lengthy periods of time, the Three Way operations manager recalls a particularly aggravating event when the Dugan Street crossing was blocked again for approximately two hours in 2010.  Due to this lengthy blockage, one of Three Way's drivers, who was locked in the facility and who had only a limited amount of driving hours per Federal law, lost two hours of driving time, and he was unable to complete all of his scheduled runs.

20.     Over the last two years, the employees of RPI and Three Way have frequently observed customers and employees lined up while waiting to get in and out of each business as a result of trains blocking the business crossings for several minutes and sometimes hours.

21.     RPI depends upon having open access over the abandoned rail line so that it can deliver products to its customers and so that its customers may have access to RPI.  On a normal business day without blockages, there are hundreds of deliveries in and out of the facility.  Likewise, Three Way depends on having open access over the Dugan Street

6

crossing seven days a week so that its trucks remain on schedule. Union Pacific is capable of using the rail line in a lawful manner that does not interfere with the rights of the plaintiffs because until the last two years, any delays associated with the crossings were insignificant and did not adversely impact RPI or Three Way.

22.     Notwithstanding the business interruption, each time the crossings are blocked by a Union Pacific train, there is no possibility of workers getting home to their families or to daycare to pick up their children, and there is no possibility of emergency vehicles getting in or out of the facility in the event of an emergency. Being held hostage as a result of the blocked crossings creates harsh feelings and has a detrimental impact on the morale and corporate culture of the plaintiffs, which is in stark contrast to the established business models of the plaintiffs.

23.     As a result of these events and concerns, in late 2009, RPI began intermittently documenting the frequency with which Union Pacific would block access to RPI's property, and on those occasions, RPI contacted various representatives of Union Pacific in an attempt to address the problems and safety concerns. After repeated complaints, Union Pacific would cease parking trains and blocking the plaintiffs' property for periods of time, but Union Pacific always resumed its practice of blocking the plaintiffs' access to their businesses and property.

24.     While investigating a potential solution to the frequent blockages, RPI learned that Union Pacific is prohibited from parking a train at a crossing in excess of ten minutes. RPI's employees have observed parked trains blocking RPI's sole access to the

7

business in excess of ten minutes on at least seven occasions in September of 2009, with at least two of those blockages lasting an hour or longer.

25.     RPI documented unlawful blockages on at least ten occasions in October of 2009, with the longest blockage lasting approximately an hour.  RPI documented unlawful blockages on at least three occasions in November of 2009, and during that month there were numerous traffic problems created by the crossing arms becoming activated for no apparent reason.

26.     RPI documented unlawful blockages on at least two occasions in December of 2009, one time in January of 2010, three times in February of 2010, and five times in March of 2010.

27.     On March 5, 2010, a Union Pacific train blocked the crossing from 4:28 p.m. to 5:45 p.m., which again prevented employees from leaving timely and was a hardship on those who could not pick up their children from daycare, etc.  In March of 2010, there were at least three instances in which a train blocked the crossing for thirty minutes or longer. Union Pacific had a number of maintenance problems with the track throughout the month of March 2010, and on multiple days in March, the crossing arms were up and down all day long blocking traffic even though no trains were present.

28.     RPI documented unlawful blockages on at least eight occasions in April of 2010, and two of those blockages lasted an hour and ten minutes during high traffic periods for RPI.  On April 13 alone, RPI's crossing was blocked two times for twenty minutes, one time for an hour and 13 minutes, and one time for forty-nine minutes, all of which occurred in peak working hours.  There were only two instances in May of 2010 in

which the crossing was blocked for over ten minutes with the trains shifting back and forth as they were entering Union Pacific's yard.  There were also continued blockages caused by maintenance work and the crossing arms activating for no apparent reason.

29.     The blockages in June of 2010 were consistent with how Union Pacific previously used the rail line.  Although traffic was heavy that month, there were only two instances in which RPI's crossings were blocked for more than ten minutes even with the trains stopping and shifting back and forth as they prepared to enter Union Pacific's rail yard.

30.     The blockages in July of 2010 were relatively minor with the exception of July 14.  On that date, one train blocked the crossings to RPI and Three Way for fifty minutes, and approximately ten minutes after that train left, another train blocked the crossings for approximately one hour and seven minutes.  In other words, all access to and from Three Way and RPI was blocked for nearly two hours in the middle of the work day.  During those periods, traffic was backed up waiting to get in and out of RPI's facility, and at least one customer parked his truck, climbed through the parked train, completed his transaction with RPI, climbed back through the train, and left the facility.  In addition, it is apparent that some customers who were blocked while waiting to enter RPI's facility were blocked again for over an hour as they tried to leave.

31.     On August 16, 2010, a Union Pacific train blocked RPI's crossing for approximately thirty five minutes, and returned about seven minutes later to block the crossing for another fourteen minutes.  On August 25, 2010, an employee had a medical emergency and an ambulance was called.  Luckily, the ambulance only had to wait at the

crossing for a few minutes before getting through.  Later that afternoon, the crossing was blocked by a parked and shifting train for approximately twenty five minutes.

32.     In September of 2010, there were two occasions in which RPI's crossing was blocked by a parked and shifting train for longer ten minutes.  However, on September 28, 2010, the crossing arms were down and blocking RPI's crossing for an hour without a train being present.  Although no train was present, the blocked crossing restricted RPI's ability to get its trucks in and out of the facility.  Union Pacific's practice of using the rail line at RPI's crossing as part of Union Pacific's rail yard has continued into October of 2010, with the latest documented incident occurring on October 6, 2010.

33.     In addition to the specific instances of blockages identified above, employees of RPI have repeatedly witnessed customers and employees backed up to Roosevelt Road waiting for access.  The RPI employees have further observed customers leave in apparent frustration.  On multiple occasions, RPI employees have witnessed customers climbing through the parked trains to gain access to RPI, and on other occasions, employees—in violation of the instructions, training, and counseling provided by RPI's management—have delivered products to RPI customers by walking through the train and hand-delivering the products to the customers.

34.     The repeated, unlawful blockages have created an exceptionally dangerous situation for RPI's employees and customers.  As is demonstrated by the event that occurred on July 14, 2010, RPI's customers and employees are becoming too comfortable with the frequent blockages.  As a result, the customers and employees are taking exceptional risks by climbing through the parked trains, which could lurch into motion at

10

any given moment. Upon information and belief, Union Pacific has knowledge of the risks of serious physical injury and death that result from a railroad company's repeated failure to abide by crossing regulations because travelers become accustomed to the blockages and attempt to cross the track at great risk. Union Pacific's practice of parking its trains in front of Three Way's and RPI's facilities has created a substantial, unreasonable and foreseeable risk of harm to the public and employees of RPI. It is only a matter of time before someone is injured or killed if Union Pacific continues to ignore the regulations governing blocked crossings.

35.    Although Union Pacific has chosen to use the abandoned rail line, apparently without color of title, Union Pacific has failed to maintain the pathway it is utilizing. There are downed power lines throughout the rail line property as well as clogged drainage. The drainage problems have resulted in the flooding of RPI's property and required RPI to divert traffic for its customers and employees, again depriving RPI of the use and enjoyment of its property. In addition, the downed power lines come in contact with the water when the area floods due to the clogged drainage. There is an obvious danger of electrocution in the event the downed power lines are, or ever become, energized intentionally or inadvertently. The Union Pacific's agents have represented that the power lines and drainage areas were the responsibility of Union Pacific, but no action has been taken to address the risks or RPI's concerns.

36.    Representatives of RPI have had multiple meetings and telephone conversations with representatives of Union Pacific in an attempt to alleviate the problems and dangers of Union Pacific's activities. Representatives of Union Pacific have repeatedly

promised to "work with" RPI, but the blockages of Three Way's and RPI's businesses and property continues.  In addition, representatives of Union Pacific have promised to "look into" the drainage problems and downed power lines, but Union Pacific has failed or refused to take any action to correct problems with the drainage or downed power lines.

### CAUSE OF ACTION  NO. I

37.    RPI incorporates by reference as if set forth fully herein word for word allegations contained within paragraph nos. 1-36 of the Complaint.

38.    RPI and Three Way continue to suffer damage to their reputations, business models, and employee morale as a result of Union Pacific continuously and unlawfully violating the regulations that prohibit Union Pacific from blocking crossings for excessive amounts of time.  There is no adequate remedy at law available to RPI or Three Way to remedy the damage that has been sustained and which is ongoing.

39.    Union Pacific's practice of parking its trains in front of Three Way's and RPI's facilities has created a substantial, unreasonable and foreseeable risk of harm to the public and employees of RPI.  It is only a matter of time before someone is injured or killed if Union Pacific continues to ignore the regulations governing blocked crossings.  There is no adequate remedy at law that will prevent Union Pacific from engaging in the conduct that creates a substantial risk of injury and death as the employees and customers of RPI, in their frustration, choose to climb through the trains that are parked for excessive amounts of time.

40.    Union Pacific is prohibited by law from unreasonably restricting RPI's access to its property.  However, Union Pacific has demonstrated a pattern and practice of

ignoring the law it is obligated to follow. RPI and Three Way have no adequate remedy at law and seek a mandatory injunction against Union Pacific preventing Union Pacific from blocking RPI's and Three Way's access to their businesses and property.

41.    RPI is entitled to an injunction preventing Union Pacific from depriving RPI of the use and enjoyment of its property and compelling Union Pacific to comply with the rules and regulations governing Union Pacific. In particular, Union Pacific should be (1) enjoined from unlawfully blocking the access to the property and businesses of Three Way and RPI; (2) compelled to repair and maintain the fallen power lines, obstructed drainage, and right of way in general; and (3) prohibited from using the crossings at RPI and Three Way's facilities as an extension of Union Pacific's rail yard because their practice of using the rail line as part of the yard changes the fundamental nature of the property and unlawfully interferes with the property rights of RPI and Three Way.

## CAUSE OF ACTION II

42.    RPI incorporates by reference as if set forth fully herein word for word allegations contained within paragraph nos. 1-41 of the Complaint.

43.    The unlawful depravation of RPI's property rights has resulted in the "inverse condemnation" and taking of RPI's property. Union Pacific's expansion of its rail yard to the abandoned rail line formerly owned by Chicago, Rock Island and Pacific Railroad Company has resulted in the denial of RPI's full use and enjoyment of its property.

44.    Union Pacific's constant blockages of RPI's property coupled with Union Pacific's failure to maintain the rail line, has caused damages to RPI in the form of lost efficiency in the work place and harm to its reputation due to RPI's inability to receive and

13

ship goods and loss of use of its property due to the restricted access and loss of parking due to the flooding caused by Union Pacific's failure to maintain its presumed right of way. The interference with RPI's property rights has also harmed RPI's corporate culture and business model because RPI has not been able to serve its customers as it has done for decades and because the employees are locked in and out of the facility without regard to their personal schedules or the work requirements of RPI.

45.     The foregoing actions and omissions by Union Pacific constitute a taking and deliberate indifference to RPI's rights under the Fifth and Fourteenth Amendments of the United States Constitution, Article II §22 of the Constitution of the State of Arkansas, and Ark. Code Ann. § 18-15-102.

46.     RPI is entitled to damages, injunctive relief, costs, and attorney's fees as a result of Union Pacific's unlawful taking of its property.

## CAUSE OF ACTION III

47.     RPI incorporates by reference as if set forth fully herein word for word allegations contained within paragraph nos. 1-46 of the Complaint.

48.     The State of Arkansas endowed Union Pacific with powers of eminent domain and condemnation which are traditionally and exclusively governmental in nature.

49.     Union Pacific's exercise of condemnation of RPI's real property rights was a public function and, as a result, Union Pacific is a state actor.

50.     Union Pacific's denial of RPI's property rights, denial of RPI's ability to engage in commerce, and denial of safe ingress and egress to the RPI facility has resulted in the deprivation of RPI's, its customers', and its employees' rights and privileges secured by

the Constitutions and laws of the United States and the State of Arkansas.   As a consequence, RPI is entitled to redress pursuant to 42 U.S.C. § 1983 and Ark. Code Ann. §§ 16-123-105 et seq.

51.    RPI is entitled to damages, injunctive relief, costs, and attorney's fees as a result of the deprivation of RPI's rights.

### CAUSE OF ACTION IV

52.    RPI incorporates by reference as if set forth fully herein word for word allegations contained within paragraph nos. 1-51 of the Complaint.

53.    Union Pacific's constant blockages of Three Way's and RPI's property in effect imprisons the employees and customers in the facility.   Moreover, emergency personnel are effectively locked out of the facility for those times when RPI's access to its property is unlawfully blocked.

54.    Union Pacific's pattern and practice of blocking access to the property, coupled with its failure to maintain the rail line and surrounding area, has deprived RPI and its subsidiary of the use and enjoyment of the property and has resulted in unreasonable risks of eminent harm to the public and employees of RPI by virtue of the individuals climbing through the parked trains as well as the restricted access to emergency services.

55.    The above acts and omission of Union Pacific constitute a nuisance and has proximately caused harm to Three Way and RPI.   Three Way and RPI are entitled to damages and injunctive relief for the abatement of the nuisance.

## DAMAGES

56.     RPI incorporates by reference as if set forth fully herein word for word allegations contained within paragraph nos. 1-55 of the Complaint.

57.     Replacement Parts, Inc.; Parts Warehouse, Inc.; and Three Way Transfer of Arkansas have suffered damages in the form of lost productivity, loss of the use and enjoyment of their property, diminution in value to RPI's property, attorney's fees and costs. These damages continue to grow, and in the event Union Pacific's misconduct is not corrected, RPI may be forced to relocate in order to mitigate its losses, maintain its business model, and mend the damage to its business reputation. In that event, RPI will also suffer costs of relocating, re-engineering, and re-tooling the new facility. Without regard to the other recoverable damages, the appraised diminution in value to RPI's property as a result of the blockages has been appraised in excess of 1.4 million dollars.

58.     The damages of Three Way and RPI exceed the minimum amount for Federal diversity jurisdiction.

59.     Three Way and RPI are entitled to an injunction (1) prohibiting Union Pacific from unlawfully blocking the access to the property and businesses of Three Way and RPI; (2) compelling Union Pacific to repair and maintain the fallen power lines, obstructed drainage, and right of way in general; and (3) prohibiting Union Pacific from using the crossings at RPI and Three Way's facilities as an extension of Union Pacific's rail yard.

60.     RPI and Three Way respectfully request a trial by jury on all contested issues of fact.

61.     RPI and Three Way reserve the right to plead further upon the discovery of additional facts.

WHEREFORE, Replacement Parts, Inc.; Parts Warehouse, Inc.; and PCD, Inc. d/b/a Three Way Transfer of AR pray for injunctive relief and that they have and recover judgment against Union Pacific Railroad sufficient to compensate them for their damages, attorney's fees, costs, and all other relief to which they may be entitled.

Respectfully submitted,

BARBER, McCASKILL, JONES & HALE, P.A.
Attorneys at Law
2700 Regions Center
400 West Capitol Avenue
Little Rock, AR 72201
(501) 372-6175

By: _____
    James D. Robertson   AR BIN 95181

Attorneys for Plaintiffs, Replacement Parts, Inc.; Parts Warehouse, Inc.; and PCD, Inc. d/b/a Three Way Transfer of AR

Sep-22-09  04:02pm  From-BEACH ENTERPRISES            +5012765501          T-602  P.19/14  F-104

No. 4040 Filed for Record April 30, 197 5, at 2:47 o'clock P.M.
(SEAL)          and recorded May 1, 197 1, HOUER McNAIR, CLERK

## ASSIGNMENT

BOOK 1600 PAGE 479

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, Robert M. Goff, Jr., Richard A. Goff, Sr. and Julie Goff

Allen acquired the following described lands in Pulaski County, Arkansas,

from Chicago, Rock Island & Pacific Railroad Company by Warranty Deed of

record in Pulaski County, Arkansas, Deed Book 1222 at page 391, which lands

are described as follows:

*Release of Right of Way*

*ASSIGNMENT OF RIGHT OF WAY ROOSEVELT Rd. Railroad Lease*

Part of the Northwest Quarter of Section 13, Township 1 North,
Range 12 West, Pulaski County, Arkansas, more particularly
described as:  Commencing at the Northwest corner of said
Section 13; thence South along the West line of said Section
13, 512.0 feet to a point on the South right-of-way line of
East Roosevelt Road; thence East along the South right-of-way
line of East Roosevelt Road, 1861.7 feet to the intersection
of the South right-of-way line of East Roosevelt Road and the
West right-of-way line of Dugan Street; thence South along
the West right-of-way line of Dugan Street, 715.0 feet; thence
South 89° 54' 40" West parallel with and 75 feet South of
the centerline of track of the Chicago, Rock Island and
Pacific Railroad Company, 644.0 feet to the point of beginning;
thence South 0° 04' East, 522.14 feet; thence South 78° 03'
10" West, 1008.5 feet; thence North 08° 05' 50" West, 736.54
feet to a point which is 75 feet South of the centerline of
tract of the Chicago, Rock Island and Pacific Railroad Company;
thence North 89° 54' 40" East parallel with and 75.0 feet
South of the centerline of track of said Railroad Company,
1089.78 feet to the point of beginning; and

WHEREAS, said lands are subject to the provisions of unrecorded right-

of-way permit dated November 5, 1935 from Rock Island Improvement Company

to Arkansas Power & Light Company pertaining to certain lands within which the

above described lands are located, a photo-copy of which right-of-way permit

is attached hereto and made a part hereof;

NOW, THEREFORE, for the considerations provided for in said Warranty

Deed referred to above, Chicago, Rock Island & Pacific Railroad Company does

hereby assign all its rights as Lessor in and to said right-of-way permit dated

November 5, 1935 insofar as it applies to the above described lands acquired by

Robert M. Goff, Jr., Richard A. Goff, Sr. and Julie Goff Allen, only, to said

Robert M. Goff, Jr., Richard A. Goff, Sr. and Julie Goff Allen.

This instrument prepared by

SMITH, WILLIAMS, FRIDAY, ELDREDGE & CLARK
1100 Boyle Building
Little Rock, Arkansas


EXHIBIT
1

Sep-22-80  04:02pm  From-BEACH ENTERPRISES              +6015765903      T-592  P.14/14  F-188

This ___ day of _____ , 1974.

CHICAGO, ROCK ISLAND & PACIFIC RAILROAD
COMPANY

BY: _____
LEASE SUPERVISOR
R. A. Lamberty

ATTEST:

_____
Secretary
E. F. Wilkinson
(SEAL)

## ACKNOWLEDGMENT

STATE OF ILLINOIS   )
                    ) ss
COUNTY OF COOK      )

On this 28th day of _____ May _____ , 1974, before me, a Notary

Public, within and for the County and State aforesaid, duly commissioned, quali-

fied and acting, personally appeared __ R. A. Lamberty _____ and _____

__ E. F. Wilkinson __ , to me well known, who stated that they were the __ Lease Supervisor __

and ___ Secretary ____ of Chicago, Rock Island & Pacific Railroad Company, and

that they were authorized to execute the foregoing instrument in the name and be-

half of said corporation, and acknowledged that they had executed same for the

consideration and purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this

28th day of ___ May _____ , 1974.

_____
Notary Public
Audrey E. Wians

My Commission expires:

December 1, 1977 _____

(SEAL)

Sep-22-00  04:02pm   From-BEACH ENTERPRISES          +5013766603        T-802  P.12/14  F-184



[312] 922-9390

# Chicago, Rock Island and Pacific Railroad Company

LA SALLE STREET STATION  |  CHICAGO, ILLINOIS 60605

J. O. CATHEY
DIRECTOR - INDUSTRIAL DEVELOPMENT AND REAL ESTATE

E. T. SMITH
MANAGER
INDUSTRIAL
DEVELOPMENT

J. P. HEDGPETH
ASSISTANT GENERAL
INDUSTRIAL
AGENT

O. C. THOMPSON
MANAGER
REAL ESTATE

R. L. WILEY
TITLE CLOSING
SUPERVISOR

R. A. LAMBERTY
LEASE SUPERVISOR

April 30, 1974

RE:  FILES 22341
       40158-23

Mr. William L. Terry
SMITH, WILLIAMS, FRIDAY,
ELDREDGE & CLARK
Boyle Building
Little Rock, AR 72201

Dear Mr. Terry:

   Incident to and effective as of the date of conveyance of its real property, which includes the property reflected in Lease 22341, dated November 5, 1935 and effective November 5, 1935 in favor of Arkansas Power and Light Company, as Lessee, the Rock Island Improvement Company as Lessor, hereby assigns said lease to Robert M. Goff, Jr., Richard A. Goff, Sr., and Julie Goff Allen.

   The Lessee, by copy of this letter, is being advised of this assignment.

Very truly yours,

R. A. Lamberty
Lease Supervisor

cc:  Arkansas Power & Light Company
     P. O. Box 551
     Little Rock, Arkansas 72203

     Robert M. Goff, Jr., et al
     1785 Tower Building
     Little Rock, AR 72201

Enclosure:  Original Lease

GGJ:lda



EXHIBIT
2

78-15549

## EASEMENT

KNOW ALL MEN BY THESE PRESENTS:

That We, Richard A. Goff and Linda K. Goff, his wife, ... H. Goff, Jr. and Helen ?. Goff, his wife, Julie ... lf Allen and Robert M. Goff, GRANTORS, for and in consideration of the sum of One Hundred Dollars ($100.00) and other good and valuable considerations, in hand paid by 555, Inc., an Arkansas corporation, GRANTEE, the receipt of which is hereby acknowledged, do hereby grant and convey unto the said GRANTEE and unto its successors and assigns forever, the following:

A perpetual but non-exclusive easement for pedestrian and vehicular ingress and egress described as follows:

A strip of land 50 feet wide in a north-south direction extending from the North boundary line of Goffs No. 1 Addition to the City of Little Rock, Pulaski County, Arkansas, a portion of which is platted of record in Plat Book 33 at Page 69 and the remainder extends North along the East and West boundary lines of said platted easement extended North to the South right of way line of East Roosevelt Road (cost of the maintenance of this non-exclusive easement shall be borne equally on a 50-50 basis by Grantors and Grantee).

Also, a perpetual easement and right to erect a sign upon lands of Grantors at the intersection of the above described easement for pedestrian and vehicle ingress and egress and the South right of way line of East Roosevelt Road, more particularly described as follows:

TO HAVE AND TO HOLD the same unto the said Grantee and unto its successors and assigns forever. And we hereby covenant with said Grantee that we are the owners of fee simple title to the lands comprising the above described easements.

78-15549

EXHIBIT
3

WITNESS our hands and seals on this 5 day of July, 1977.

RICHARD A. GOFF

ROBERT H. GOFF, JR.

LINDA K. GOFF

HELEN P. GOFF

JULIE GOFF ALLEN

ROBERT M. GOFF

## ACKNOWLEDGMENT

STATE OF ARKANSAS )
                   ) SS
COUNTY OF PULASKI )

BE IT REMEMBERED that on this day personally appeared before me, a Notary Public within and for the aforesaid County and State, Richard A. Goff and Linda K. Goff, his wife, Robert M. Goff, Jr. and Helen P. Goff, his wife, Julie Goff Allen, and Robert M. Goff, to me personally well known, who acknowledged that they had executed the foregoing Easement for the consideration and purposes therein mentioned and set forth.

WITNESS my hand and seal this 13th day of July, 1977.

NOTARY PUBLIC

My Commission expires:

March 24, 1981

This instrument prepared by:

FRIDAY, ELDREDGE & CLARK

Little Rock, Arkansas 72201

-2-

SPECIAL WARRANTY DEED

RETURN TO:
PULASKI COUNTY TITLE CO., INC.
801 S. LOUISIANA SUITE 100 / 1A
LITTLE ROCK, ARKANSAS 72201

86-68996

557

KNOW ALL MEN BY THESE PRESENTS:

That City of Little Rock, Arkansas, grantor, by its
Mayor and City Clerk, duly authorized by proper resolution of
its City Board of Directors, for the consideration of the sum
of One Hundred Dollars ($100.00) and other valuable considera-
tion in hand paid by Parts Warehouse, Inc., grantee, the receipt
of which is hereby acknowledged, does grant, bargain, sell and
convey unto the said grantee and unto its successors and assigns
forever the following described land, situated in Pulaski County,
Arkansas, to-wit:

FILED & RECORDED
1986 OCT 31 PM 4 28
CAROLYN STALEY STALLINGS
CLEAN CO CIRCUIT

> Lot 1, Strafco's Replat of Goff's No.1
> Addition to the City of Little Rock,
> Pulaski County, Arkansas.

TO HAVE AND TO HOLD unto said Parts Warehouse, Inc.,
and unto its successors and assigns forever, with all appurtenances
thereunto belonging.

And grantor hereby covenants with the said grantee that
it will forever warrant and defend the title to said land against
all claims done or suffered by it, subject to easements, rights
of way and restrictions of record, if any, and conveying herein
the interest of grantor acquired by grantor in Warranty Deed
from Strafco, Inc., filed for record on December 3, 1981, and
recorded as Instrument No. 81-45368.

IN TESTIMONY WHEREOF, the name of the grantor is hereunto
affixed by its Mayor and attested and its seal affixed by its
City Clerk on this _29th_ day of October, 1986.

                    CITY OF LITTLE ROCK, ARKANSAS

                    BY _____
                                        Mayor

ATTEST:

_____
                    City Clerk

(Seal)

I certify under penalty of false swearing
that at least the legally correct amount of
documentary stamps have been placed on this
instrument. (If none shown, amount is up
to authorize paid)

Jack Cameron, Agent for
Parts Warehouse, Inc.
P. O. Box 3643
Little Rock, AR 72203

THIS INSTRUMENT PREPARED BY:
BARBER, McCASKILL, AMSLER, JONES & HALE
ATTORNEYS AT LAW
1600 UNION NATIONAL PLAZA
LITTLE ROCK, ARKANSAS 72201

EXHIBIT
4

-2-

558

### ACKNOWLEDGMENT

STATE OF ARKANSAS)
                 )ss
COUNTY OF PULASKI)

      On this day, before me personally appeared _____

_Thomas A. Prince_____ and _____Jane Czech_____

to me personally well known, who acknowledged that they were the
Mayor and City Clerk of the City of Little Rock, Arkansas, and
they, as such officers, being authorized so to do, had executed
the foregoing instrument for the purposes therein contained, by
signing the name of the City of Little Rock, Arkansas, by themselves
as such officers.

      WITNESS my hand and official seal on this the _30th_ day
of October, 1986.

                           _____
                         Notary Public   Kay Richards

                  My Commission Expires:_ 6-1-93

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## 5TH DIVISION

REPLACEMENT PARTS, INC.;               )
PARTS WAREHOUSE, INC.; AND PCD,        )
INC. d/b/a THREE WAY TRANSFER OF AR    )
                                       )
      Plaintiffs,               )          Case No. 60 CV 2010 6118
                                       )
vs.                                    )
                                       )
                                       )
                                       )
UNION PACIFIC RAILROAD COMPANY,        )
                                       )
      Defendant.                )
                                       )

### NOTICE OF FILING NOTICE OF REMOVAL

Defendant, Union Pacific Railroad Company hereby gives Notice of its filing of a Notice

of Removal in the United States District Court for the Eastern District of Arkansas on November

24, 2010, a copy of which is at attached hereto as "Exhibit A."

                    Respectfully Submitted,

                    GIBBS, ARMSTRONG, BOROCHOFF,
                      MULLICAN & HART, P.C.

                    George Gibbs, ABA #87065
                    Robert D. Hart, OBA #16358
                    601 South Boulder Avenue, Suite 500
                    Tulsa, Oklahoma 74119
                    Telephone (918) 587-3939
                    Facsimile (918) 582-5504
                    **ATTORNEYS FOR DEFENDANT**



EXHIBIT
B

PENGAD 800-631-6989

## CERTIFICATE OF DELIVERY

I hereby certify that a full, true and correct copy of the above and foregoing document was served on the 23rd day of November, 2010, via:

_____   U. S. First Class Mail, proper postage prepaid;
_____   USPS – Signature Confirmation;
_____   Facsimile;
_____   Hand Delivery;
_____   Overnight Express Delivery

to the following counsel of record:

James D. Robertson
BARBER, McCASKILL, JONES, & HALE, P.A.
2700 Regions Center
400 West Capitol Avenue
Little Rock, AR 72201

ATTORNEYS FOR PLAINTIFFS

George Gibbs

Report Selection Criteria

**Case ID:**          60CV-10-6118
**Citation No:**
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:**    60CV-10-6118 - REPLACEMENT PARTS ET AL V UNION PACIFIC RAILROAD
**Filing Date:** Tuesday , October 26th, 2010
**Type:**       OM - OTHER-CIVIL MISC
**Status:**     *none*
**Images:**

## Case Event Schedule

*No case events were found.*

## Case Parties

EXHIBIT
C

(501)340-8550

| Seq # | Assoc | End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | | | JUDGE | 7965388 | **HON. ERNEST SANDERS, JR - 5TH DIVISION 6TH CIRCUIT** |
| **Aliases:** | *none* | | | | |
| | | | | | |
| 2 | | | PLAINTIFF | 10617388 | **REPLACEMENT PARTS, INC.** |
| **Aliases:** | *none* | | | | |
| | | | | | |
| 3 | | | PLAINTIFF | 10617391 | **PARTS WAREHOUSE, INC.** |
| **Aliases:** | *none* | | | | |
| | | | | | |
| 4 | | | PLAINTIFF | 10617392 | **PCD, INC.** |
| **Aliases:** | THREE WAY TRANSFER OF AR | | | | |
| | | | | | |
| 5 | | | DEFENDANT | 10617393 | **UNION PACIFIC RAILROAD** |

| | | | | | COMPANY |
|---|---|---|---|---|---|
| **Aliases:** | *none* | | | | |

| 6 | | | PLAINTIFF ATTORNEY | 1006017 | **ROBERTSON, JAMES D** |
|---|---|---|---|---|---|
| **Aliases:** | ROBERTSON, JAMES D. | | | | |

## Violations

## Sentence

No Sentence Info Found.

## Docket Entries

| Filing Date | Description | Name | Monetary |
|---|---|---|---|
| 10/26/2010 04:11 PM | MOF ORIGINAL | | |
| **Entry:** | *none.* | | |
| **Images** | No Images | | |
| | | | |
| 10/26/2010 04:11 PM | COMPLAINT/PETITION FILED $ | | |
| **Entry:** | *none.* | | |
| **Images** | WEB | | |
| | | | |
| 10/26/2010 04:11 PM | SUMMONS ISSUED | | |
| **Entry:** | *none.* | | |
| **Images** | No Images | | |

| 10/28/2010 01:10 PM | PAYMENT RECEIVED | | |
|---|---|---|---|
| **Entry:** | A Payment of -$165.00 was made on receipt 60CI25659. | | |
| **Images** | No Images | | |
| | | | |
| 10/29/2010 04:14 PM | SUMMONS SERVED | | |
| **Entry:** | SERVED DEF 10/28/10 | | |
| **Images** | No Images | | |
| | | | |